IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VICKKI WILLIS, as Independent Administrator of the estate of Alteriq Pleasant, deceased, ) ) Plaintiff, ) ) v. ) ) COOK COUNTY; THOMAS DART, the ) SHERIFF OF COOK COUNTY, in his official ) capacity; OFFICER CHAD RIMSEK; and, ) OFFICER A. AUXILA, Star No. 18343, ) ) Defendants. ) | No. 24 C 5996<br><br>Judge Robert W. Gettleman |

## MEMORANDUM OPINION & ORDER

Plaintiff Vicki Willis, as Independent Administrator of the estate of Alteriq Pleasant ("Pleasant"), deceased, brings a three-count complaint against Cook County, Thomas Dart in his official capacity as the Sheriff of Cook County, and Officers Chad Rimsek and Allan Auxila. Count One is a 42 U.S.C. § 1983 action that alleges Officers Rimsek and Auxila denied adequate medical care to Pleasant in violation of the Fourteenth Amendment. Count Two is a 42 U.S.C. § 1983 action under Monell v. New York City Dep't of Social Services, 436 U.S. 658 (1978), that alleges Sheriff Thomas Dart, with deliberate indifference, directly and proximately caused the violation of Pleasant's Fourteenth Amendment rights. Count Three asserts a state law indemnification claim against Thomas Dart and Cook County under 745 ILCS 10/9-102. Defendants filed a Fed. R. Civ. P. 12(b)(6) motion to dismiss. (Doc. 7). For the reasons stated below, the motion is granted in part and denied in part.

1

## BACKGROUND

This case arises from the death of plaintiff's son, Alteriq Pleasant. Pleasant was a pretrial detainee at the Cook County Department of Corrections ("CCDOC"). He was booked in to the CCDOC on July 20, 2022, and assigned to Division 08, Tier 5G., an open dorm-style living unit without cells.

On July 21, 2022, around 12:46 p.m., Pleasant searched his bed and removed a substance from a bag hidden underneath his mattress, glanced towards Officer Chad Rimsek's ("Rimsek") direction, and put something in his mouth. Pleasant ingested the substance in full view of a surveillance camera in the unit. Around 1:07 p.m. Pleasant sat down at a table facing Rimsek, who was seated a few feet away. Pleasant remained at the table after the other detainees left. Around 1:16 p.m. Pleasant lost consciousness while at the table. Another detainee attempted to wake Pleasant around 1:19 p.m. and again around 1:21 p.m. Around 1:21 p.m., Pleasant and Defendant Rimsek had a conversation. Shortly afterwards, Pleasant stumbled to his bunk and laid down. Pleasant was overdosing on a narcotic substance and was in distress.

Rimsek was assigned to the 7:00 a.m. to 3:00 p.m. shift on Tier 5G that day. After the events described above, Rimsek did not perform a security check or make any other observation to ensure that Pleasant was conscious for the remainder of his shift.

Around 2:56pm, Auxila arrived at Tier 5G to start his initial count and relieve Rimsek. Despite recording a detainee count at this time, Auxila did not perform a security check or make any other observation to ensure that Pleasant was conscious. At 4:44p.m., Auxila was not on the tier. A detainee alerted Auxila that Pleasant was unresponsive. Auxila returned to Tier 5G and saw that Pleasant was unconscious on his bed. Auxila did not administer Narcan to Pleasant.

Auxila radioed medical personnel.

While administering CPR, the medical personnel noted that Pleasant was foaming from his mouth. The Chicago Fire Department arrived around 5:00 p.m. Pleasant was taken to Mt. Sinai Hospital, where he died on August 2, 2022. The bag stashed under Mr. Pleasant's mattress was not recovered by CCDOC staff. The Cook County Medical Examiner's Office concluded that Pleasant's death was caused by complication of probable opioid toxicity.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint. Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7, 570 F.3d 811, 820 (7th Cir. 2009). To survive a motion to dismiss, plaintiff must clear two hurdles: (1) "the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests;" and (2) "its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level.'" Tamayo v. Blagojevich, 526 F.3d 1074, 1084 (7th Cir. 2008). At this stage, "the court must construe all of the plaintiff's factual allegations as true, and must draw all reasonable inferences in the plaintiff's favor." Virnich v. Vorwald, 664 F.3d 206, 212 (7th Cir. 2011). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

## DISCUSSION

### A. §1983 claim against Rimsek and Auxila

Plaintiff's first claim is §1983 action against Rimsek and Auxila for denying adequate medical care to a pretrial detainee in violation of the Fourteenth Amendment's Due Process

3

Clause. In the Seventh Circuit, "a standard of objective reasonableness, and not deliberate indifference," governs such claims. McCann v. Ogle County, 909 F.3d 881, 886 (7th Cir. 2018) (citing Miranda v. County of Lake, 900 F.3d 335 (7th Cir. 2018)).

The Seventh Circuit has recently clarified how district courts should apply the objective reasonableness inquiry in the case of pretrial detainees alleging inadequate medical care. See Pittman by & through Hamilton v. Madison County., Illinois, 108 F.4th 561, 569-73 (7th Cir. 2024), reh'g denied, No. 23-2301, 2024 WL 3889635 (7th Cir. Aug. 21, 2024) (recognizing error in prior decision). Now, a "pretrial detainee does not have to prove a defendant's subjective awareness of a serious risk of harm." Pittman, 108 F.4th at 571. Instead, "to prevail, [the plaintiff] must prove that the defendants did not take reasonable available measures to abate the risk of serious harm to [the detainee], even though reasonable officers under the circumstances would have understood the high degree of risk involved, making the consequences of the defendants' conduct obvious." Pittman, 108 F.4th at 572 (emphasis in original).

The allegations here support the inference that Rimsek did not take reasonable available measures to abate the risk of serious harm to Pleasant. The complaint alleges that Rimsek, after interacting with a visibly overdosing Pleasant around 1:21 p.m., took no action for the hour and a half of his remaining shift. In doing nothing, Rimsek, of course, did not take any reasonable available measures to abate the risk of serious harm to Pleasant.

The complaint also supports the inference that a reasonable officer under the circumstances would have understood the high degree of risk involved in doing nothing to respond to an overdose. It is difficult to ascertain from the complaint how visibly in distress Pleasant was when interacting with Rimsek. But the complaint alleges that Pleasant was in

4

visible distress due to an opioid overdose, Rimsek interacted with him, and Rimsek did not do anything about it. At this stage—construing all the plaintiff's factual allegations as true and drawing all reasonable inferences in plaintiff's favor—the complaint supports the conclusion that a reasonable officer would have detected the signs of an overdose and understood the risk of not responding to it. Consequently, defendants' motion to dismiss Count One as to Rimsek is denied.

As to Auxila, the complaint does not plead adequate facts to clear the objective reasonableness inquiry. The complaint alleges that Auxila failed to perform a security check on the residents of Tier 5G altogether, and that he left the tier. After being informed that Pleasant was unresponsive, Auxila returned to the tier and radioed medical personnel. Auxila did not administer Narcan to Pleasant. The complaint does not allege that Narcan was available to Auxila.

Auxila's failure to perform required security checks may amount to negligence. See generally Kingsley v. Hendrickson, 576 U.S. 389, 396 (2015) ("[L]iability for negligently inflicted harm is categorically beneath the threshold of constitutional due process."); Pittman, 108 F.4th at 567 (explaining that the "mental-state requirement safeguards against liability for 'negligently inflicted harm.'"). But the complaint does not plead facts showing that reasonable officers under the same circumstances as Auxila would have understood the high degree of risk involved in leaving Pleasant unattended, because Auxila was not in a position to know that Pleasant was overdosing. Instead, the complaint alleges that Auxila should have known about Pleasant's medical situation had he not been negligent in his duties.

Auxila's alleged failure to administer Narcan also does not clear the objective

5

reasonableness inquiry. The complaint does not allege that Narcan was available to Auxila. Thus, the complaint does not show that Auxila failed to take a reasonable available measure to abate the risk of serious harm to Pleasant. Consequently, defendant's motion to dismiss Count One as to Auxila is granted.

### B. Qualified immunity

Defendants argue that Rimsek is entitled to qualified immunity. Plaintiff argues that dismissal under Rule 12(b)(6) on qualified immunity grounds is generally inappropriate because plaintiff is not required to plead factual allegations to overcome a defense of qualified immunity.

The court agrees with plaintiff. Generally, "a complaint is generally not dismissed under Rule 12(b)(6) on qualified immunity grounds" for the exact reason that plaintiff cites. Alvarado v. Litscher, 267 F.3d 648, 651 (7th Cir. 2001). But there is an exception to that general rule: "dismissal under Rule 12(b)(6) is appropriate based on qualified immunity [when] plaintiffs' well-pleaded allegations, taken as true, do not 'state a claim of violation of clearly established law.'" Hanson v. LeVan, 967 F.3d 584, 590 (7th Cir. 2020) (quoting Behrens v. Pelletier, 516 U.S. 299, 306 (1996)); see also Chasensky v. Walker, 740 F.3d 1088, 1095-97 (7th Cir. 2014) (holding that the plaintiff failed to establish a clearly established right and the district court erred in denying the defendants' motion to dismiss on qualified immunity grounds).

That exception is not applicable to this case. For the purposes of qualified immunity, a detainee's constitutional right to receive adequate medical care is clearly established law. Board v. Farnham, 394 F.3d 469 (7th Cir. 2005) ("[T]he right to receive adequate treatment for serious medical needs is a clearly established constitutional right."). See also McRaven v. Sanders, 577 F.3d 974, 980 (8th Cir. 2009) ("[A] detainee's right to medical treatment is clearly established.")

(citing Estelle v. Gamble, 429 U.S. 97, 104 (1976)).  At this stage, plaintiff's allegations that Rimsek denied Pleasant adequate treatment for a serious medical need is enough to survive a motion to dismiss.

### C. Monell claim against Dart

Plaintiff brings a claim against Dart in his official capacity as Sheriff of Cook County under Monell.  To state a Monell claim, plaintiff must plead facts that would allow the court to plausibly infer that an official municipal custom or policy caused Pleasant to be deprived of a constitutional right.  See McCauley v. City of Chi., 671 F.3d 611, 616 (7th Cir. 2011); Monell, 436 U.S. at 690.  Under a Monell theory, "[t]he central question is always whether an official policy, however expressed (and we have no reason to think that the list in Monell is exclusive), caused the constitutional deprivation.  It does not matter if the policy was duly enacted or written down, nor does it matter if the policy counsels aggressive intervention into a particular matter or a hands-off approach."  Glisson v. Indiana Dept. of Corrections, 849 F.3d 372, 379 (7th Cir. 2017) (en banc).

As discussed above, plaintiff has pled factual material that allows the court to plausibly infer that Pleasant was deprived of a constitutional right.  On the second element, plaintiff alleges that CCDOC failed to establish or implement policies to: (1) ensure that correctional officers provide or summon immediate medical attention for detainees in distress, under the influence of drugs, or experiencing a drug overdose; (2) ensure that correction staff prevent open illicit drug use in rehabilitation treatment units and are trained to administer Narcan to detainees exhibiting signs of overdose; and (3) ensure that correctional officers conduct security checks properly to verify that detainees are alive.  "[I]n situations where rules or regulations are required to remedy a potentially dangerous practice, the County's failure to make a policy is also

7

actionable." Thomas v. Cook County Sheriff's Dept., 604 F.3d 293, 303 (7th Cir. 2010).

This type of "gap in policy" theory "amounts to municipal action for Monell purposes only if the [municipality] has notice that its program will cause constitutional violations. Typically[,] notice is established by a prior pattern of similar constitutional violations." Bohanon v. City of Indianapolis, 46 F.4th 669, 676-77 (7th Cir. 2022) (internal quotations and citations omitted). Plaintiff alleges that Dart possessed knowledge of these gaps in policy and deliberately ignored them. Defendant argues that plaintiff's allegations are merely conclusory and are not supported by sufficient facts.

The court agrees with defendant. Plaintiff reads too much into a passage of White v. City of Chicago, 829 F.3d 837, 844 (7th Cir. 2016), which states that courts "may not apply a heightened pleading standard—more stringent than the usual pleading requirements of Rule 8(a) of the Federal Rules of Civil Procedure—in civil rights cases alleging municipal liability under ... 42 U.S.C. § 1983." The plausibility standard articulated in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 556 U.S. 662 (2009) is the usual pleading requirement of Fed. R. Civ. P. 8(a). See generally Outley v. City of Chicago, 407 F.Supp.3d 752, 764 (N.D. Ill. 2019) (explaining that the court in White v. City of Chicago held that the plaintiff's allegations "satisfied the Twombly-Iqbal standard."). Accordingly, at the pleading stage, plaintiff must plead facts that would allow the court to plausibly infer that an official municipal custom or policy caused Pleasant to be deprived of a constitutional right. See McCauley, 671 F.3d at 616.

Plaintiff does not allege facts that support the reasonable inference that Pleasant's constitutional deprivation was more than an isolated incident. As discussed above, plaintiff

8

plausibly alleged that Rimsek was deficient in his duties to, among other things, summon immediate medical attention for detainees experiencing a drug overdose and conduct security checks properly to verify that detainees are alive. Auxila, on the other hand, summoned medical attention immediately once he (belatedly) learned of Pleasant's condition. Plaintiff also points to a state case involving a pre-trial detainee named Lashawn Hilliard, who also died in CCDOC custody from an opioid overdose. Additionally, the complaint references the existence of CCDOC Policy 916, which was implemented at Cook County Jail to "ensure that the [corrections officers] are able to recognize the symptoms of intoxication and withdrawal from alcohol or drugs, and that those inmates who are intoxicated or experiencing withdrawal are provided appropriate medical treatment."

Taken together, these facts are insufficient to support the plausible inference that Pleasant's constitutional deprivation was the result of an official policy or custom. The reference to CCDOC Policy 916 shows that CCDOC has a policy on the exact issue that plaintiff alleges that Cook county "failed to establish…policies" for. The actions of Rimsek and Auxila alone support the inference of an isolated incident, but nothing more. See Gill v. City of Milwaukee, 850 F.3d 335, 344 (7th Cir. 2017) (explaining that for de facto policy Monell claims, plaintiff "must allege facts that permit the reasonable inference that the practice is so widespread so as to constitute a governmental custom."). Without more context on the circumstances surrounding the death of Lashawn Hilliard, it offers little support to plaintiff's allegation of the existence of an official policy or practice. See, e.g., Howell v. Wexford Health Sources, Inc., 987 F.3d 647, 657 (7th Cir. 2021) (explaining that "the comparator[s] need not be perfect" but the "similarities" must be sufficient to "show a widespread practice"); Tillman v. Burge, 813 F. Supp. 2d 946, 978

(N.D. Ill. 2011).

Ultimately, plaintiff alleges almost no factual detail beyond her conclusory assertions that Cook County failed to establish or implement a laundry list of different policies. This is insufficient to support a plausible Monell claim. Consequently, the court grants defendants' motion to dismiss Count Two.

## **CONCLUSION**

For the reasons stated above, defendants' motion to dismiss (Doc. 7) is granted in part, as to Auxila in Count One and as to Count Two. It is denied as to Rimsek in Count One. Rimsek is directed to answer the complaint on or before January 31, 2025. The parties are directed to file a joint status report using this court's form on or before February 10, 2025.

               **ENTER:**

*[signature: Robert W. Gettleman]*

               **Robert W. Gettleman**
               **United States District Judge**

**DATE: December 20, 2024**